UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM B. BALL,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES MARSHALS SERVICE, *et al.*,<br><br>    Defendants. | Civil Action No. 19-1230 (JEB) |

### MEMORANDUM OPINION

Federal prisoner William B. Ball brought this *pro se* Freedom of Information Act and Privacy Act suit in relation to requests he sent to several federal agencies seeking information about his criminal case. Three Defendants — the Department of Homeland Security, the U.S. Marshals Service, and the Department of Treasury — remain after this Court's previous dismissal of two others. These Defendants now move for summary judgment, contending that they adequately searched for records, relied on the appropriate exemptions, reasonably segregated information, and identified foreseeable harm. Although Plaintiff disagrees and cross-moves for summary judgment himself, the Court believes Defendants have the stronger position and grants their motion.

I.  **Background**

   A.  Factual Background

Because the Court focuses on Defendants' Motion for Summary Judgment, it will construe the facts in the light most favorable to Plaintiff.  See Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

Ball is presently confined in the low-custody Federal Correctional Complex in Coleman, Florida.  See ECF No. 51-1 at 30 (Pl. SMF), ¶ 2.  He was arrested in February 2018 in Florida for enticement and child-pornography charges.  Id., ¶ 1.  In December 2018, he submitted FOIA requests to DHS, USMS, Treasury's Office of Intelligence and Analysis, the Secret Service, and the Federal Bureau of Investigation.  In those requests he sought the following records relating to himself that were listed under his name or other identifier:

> [A]ny and all records whatsoever . . . including but not limited to 1) arrest reports; 2) investigatory records, including hand-written notes and final drafts; 3) reports on evidentiary and/or scientific information, findings, and conclusions; 4) plea agreements of co-defendants; 5) charging documents; 6) classifications of the charged offenses; 7) video tapes and/or DVDs; 8) telephonic recordings; 9) computer discs and storage devices; 10) computerized notepad discs; 11) photographs; and 12) all other information, data and reports of any kind not listed above and exempt by law.

ECF No. 52-3 (Def. Resp. to Pl. SMF), ¶ 6; see also ECF No. 30-4, Exh. 1 (FOIA Request) at 1.

Shortly after this suit was filed in April 2019, Immigration and Customs Enforcement — the section of DHS relevant to this case — conducted a search and informed Plaintiff that it had identified 47 responsive pages from its Office of Homeland Security Investigations.  See ECF No. 30-3 (Declaration of Toni Fuentes), ¶¶ 8, 14 & Exh. 3 (ICE FOIA Resp.); see also Def. Resp. to Pl. SMF, ¶ 7.  These pages were produced with redactions made under FOIA Exemptions 3, 6, 7(C), and 7(E).  See ICE FOIA Resp. at 1–2.  ICE subsequently reconsidered

2

some of those redactions and released further records to Plaintiff. See Def. Resp. to Pl. SMF, ¶ 10. In April 2021, ICE conducted a supplemental search and produced 154 pages to Ball, 54 of which were redacted in part under Exemptions 6, 7(C), and 7(E). See ECF No. 47-2 (Declaration of Fernando Pineiro), ¶ 10.

Meanwhile, in August 2019, USMS informed Plaintiff that its office in the Middle District of Florida had undertaken a search that uncovered 21 pages of responsive records. These records had redactions based on Exemptions 6, 7(C), 7(E), and 7(F). See ECF No. 30-4 (Declaration of Charlotte Luckstone), ¶ 23 & Exh. 2 (USMS FOIA Resp.). Later that year, Treasury reported that OIA lacked any records that would be responsive to Plaintiff's request. ECF No. 30-5 (Declaration of Michael Neufeld), ¶ 4 & Exh. 3 (OIA FOIA Resp.) at 1.

B. Procedural History

Plaintiff sued Defendants on April 26, 2019, and asked the Court to order them to produce the requested records. See ECF No. 1 (Compl.). This Court dismissed two of the original Defendants in the case — the FBI and the Secret Service — in March 2020. See ECF Nos. 22 & 23. The remaining Defendants moved for summary judgment in July 2020, see ECF No. 30, and the Court originally granted their motion, see ECF Nos. 37 (Order) & 38 (Mem. Op.), after Ball did not file a response following a series of extensions. See Mem. Op. at 1 (noting extensions and missed filing). Plaintiff's Opposition, which had been delivered to the prison mailing system on January 13, 2021, was entered on the public docket on January 27, 2021, although it was deemed filed five days earlier. See ECF No. 42. The next month he moved for reconsideration of the Court's previous summary-judgment decision, see ECF No. 41, which this Court granted, vacating its previous Opinion. See ECF No. 43. At the Court's Order,

Defendants filed a renewed Motion for Summary Judgment, see ECF No. 47 (Def. MSJ), and Plaintiff cross-moved for summary judgment. See ECF No. 51 (Pl. Cross-Mot.).

## II.     Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it can affect the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). In a FOIA case, a court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad

4

faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). Summary judgment is only proper when the court is assured that the record justifies the result. See Ctr. For Investigative Reporting v. U.S. Customs & Border Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019).

### III. Analysis

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules[,] . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Government need not, however, turn over requested information that falls into one of nine statutorily created exemptions from FOIA's broad directive. Id. § 552(b)(1)–(9). "Those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2366 (2019) (cleaned up) (quoting Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018)). Where an agency withholds records, it must show that at least one of the exemptions applies. See Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). To carry that burden, the Government "must provide a relatively detailed justification" for its withholding, "specifically identifying the reasons why a particular

exemption is relevant." Morley v. CIA, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal quotation marks omitted) (quoting King v. Dep't of Justice, 830 F.2d 210, 219 (D.C. Cir. 1987)). Courts can compel the release of any records that do not satisfy the requirements of at least one exemption. See Reps. Comm., 489 U.S. at 755.

Before turning to the heart of the analysis on the exemptions and the agencies' searches, the Court disposes of three points no longer at issue. First, Plaintiff does not "raise any new issues regarding OIA" and agrees that it lacks responsive records. See Pl. Cross-Mot. at 4. Second, to the extent that he objects to USMS's failure to counter arguments he raised in the prior round of summary-judgment briefing, see Pl. Cross-Mot. at 6–7, USMS was under no obligation to respond since that earlier briefing has been superseded by this round of motions. Third, his only beef with ICE's search is that he believes that agency must look harder for the "HSI Enforcement Operation Plan." Pl. Cross-Mot. at 16–17. ICE has now produced a redacted version of this document, thus mooting the issue. See ECF No. 53-2 (redacted Enforcement Operation Plan).

### A. Adequacy of USMS Search

Returning to the main event, Ball first questions the adequacy of USMS's search for responsive documents, quibbling with both the agency's neglect to specify its search terms and its failure to look in certain databases. See Pl. Cross-Mot. at 4–6. An agency "fulfills its [search] obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). Thus, "[i]n a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only

whether 'the search for [the requested] documents was adequate.'" In re Clinton, 970 F.3d 357, 367 (D.C. Cir. 2020) (emphasis and alteration in original) (quoting Weisberg v. Dep't of Just., 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  The adequacy of an agency's search for documents "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg, 745 F.2d at 1486.  A FOIA defendant's affidavits or declarations must "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  Unless there is evidence to the contrary, affidavits or declarations meeting these requirements are generally enough to show that an agency complied with FOIA. See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

      Plaintiff first contends that USMS's search was unreasonable because it failed to specify its search terms. See Pl. Cross-Mot. at 4.  After receiving Ball's Complaint, a USMS FOIA specialist asked "the District Office for the Middle District of Florida [the site where Ball was incarcerated] to search for potentially responsive documentation." Luckstone Decl., ¶¶ 16–17.  This generated 21 documents through a search of "internal USMS systems utilizing Mr. Ball's USMS number and Federal Identification number (FID)." Id., ¶¶ 18–19.  USMS thus actually has identified the search terms — Plaintiff's USMS and FID numbers — which were reasonable choices since Ball's request asked for "any and all records whatsoever under [his name] and/or any other identifiers used in lieu of their name." FOIA Request at 1.

      Ball also believes that USMS erred by searching in only one database: the Justice Detainee Information System (JDIS).  He suggests that USMS should have also searched the

7

Consolidated Asset Tracking System (CATS) or the Prisoner Operations Division (POD).  See Pl. Cross-Mot. at 5.  Searching the last of these, Plaintiff suggests, would have helped him document his history of hypertension and other medical conditions since the POD includes medical records.  Id. at 9.  USMS responds that its search was proper given that JDIS "is the main electronic database that houses all USMS prisoner records," including information from witnesses, medical professionals, and federal, state, and local entities.  See Luckstone Decl., ¶ 21.  There was no reason to search the CATS database, it continues, which contains information on forfeited property, because no property was taken from Ball.  See ECF No. 52 (Def. Reply); ECF No. 52-1, Exh. A. (property receipt showing no property taken).  Similarly, USMS maintains that there was no reason to search the POD because Ball's request did not cover medical records, and he did not receive medical care in USMS custody.  See Def. Reply at 2; ECF No. 52-1 (Supplemental Declaration of Charlotte Luckstone), ¶¶ 6–9.  Even if USMS had those records, moreover, the agency notes that they would have turned up in JDIS; in fact, the released documents indicate no medical treatment besides a recurring prescription.  See ECF No. 52-1, Exh. C (USM-129 Individual Custody/Detention Report) at 11, 13.  The Court agrees and thus upholds USMS's search.

    B.  Exemptions

The Court turns next to whether the agencies correctly invoked certain FOIA exemptions to withhold information from Ball in full or in part.  FOIA's nine statutory exemptions should be "narrowly construed."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976).  Several of those exemptions are at issue here — namely, Exemptions 3, 6, 7(C), 7(E), and 7(F).  The Court will address each in turn, grouping them where appropriate.

8

1. *Exemption 3*

Relying on Exemption 3, ICE withheld the "names and other information about child victims and witnesses." Def. MSJ at 9; see also Fuentes Decl., ¶¶ 31–33. That exemption covers records "specifically exempted from disclosure by statute" provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A). The relevant statute on which ICE relied is the Federal Victim and Witness Protection Act, 18 U.S.C. § 3509(d) — a recognized Exemption 3 withholding statute. See Rodriguez v. Dep't of Army, 31 F. Supp. 3d 218, 236–37 (D.D.C. 2014). The FVWPA prohibits the Government from disclosing documents in connection with a criminal proceeding that reveal "the name or any other information concerning a child," as well as information in those documents "that concerns a child." 18 U.S.C. § 3509(d)(1)(A).

ICE's withholding was consistent with the statute and Exemption 3, and Plaintiff's arguments to the contrary cannot carry the day. He distinguishes his request from other withholdings under 18 U.S.C. § 3509(d) and Exemption 3 by maintaining that he does not seek information about victims but only "the forensic data (i.e., number of files and file extensions) from the forensic examination" of devices covered by search warrants. See Pl. Cross-Mot. at 12. Further, he posits that even if he sought personal information, none would be available since the victims were identified by pseudonyms and at least one was fictitious. Id. at 12–13. Nothing in Ball's FOIA request, however, suggested that his search was limited to forensic data; even if it was, ICE might well have been obligated to redact it. See Section III.B.3, *infra*. ICE thus complied with its statutory obligation to withhold names and identifying information about child victims. See, e.g., Corley v. Dep't of Just., 998 F.3d 981, 984 (D.C. Cir. 2021) (approving

9

withholding of "the names[, ]descriptions . . . and other identifying information" of victims); Rodriguez, 31 F. Supp. 3d at 236–37 (allowing withholding of records about child victim under Exemption 3).

    2.  *Exemptions 6, 7(C), 7(F)*

The agencies also redacted "names and other personally identifiable information of law enforcement officers and other government officials involved in the criminal investigation of Plaintiff" and "personally identifiable information relating to third parties, including relatives and suspected associates of Plaintiff." Def. MSJ at 10; see also Fuentes Decl., ¶¶ 37–45; Pineiro Decl., ¶¶ 26–34; USMS Vaughn Index. In their Vaughn Indexes and briefing, the agencies assert Exemptions 6 and 7(C) to support these redactions. Both exemptions protect privacy, with the former applying to private information in "personnel and medical files and similar files," 5 U.S.C. § 552(b)(6), and the latter to similar information "compiled for law enforcement purposes." Id. § 552(b)(7). Because the Government successfully relies on Exemption 7(C) here, the Court need not address Exemptions 6 or 7(F), the latter of which USMS also invokes for the same material. See Borda v. Dep't of Just., Crim. Div., 306 F. Supp. 3d 306, 317 (D.D.C. 2018) (if "a single exemption is sufficient to justify withholding," court need "not the reach the availability of the additional exemptions invoked").

The brunt of Ball's objections to these redactions focuses on USMS's failure to specify "which redactions are claimed under which exemption(s)," which he suggests is the agency's attempt to obtain the lower burden of proof associated with Exemption 7(C). See Pl. Cross-Mot. at 7–8. While he does not explicitly challenge ICE's use of these exemptions, he argues that its remaining withholdings in these categories should be rejected since it has already removed some other redactions. See Pl. Cross-Mot. at 10–11. The fact that ICE is no longer withholding

10

certain information, however, does not invalidate its continuing reliance on these exemptions to withhold other material. In any event, ICE's remaining withholdings are justified for the reasons described below.

Starting with the question of which exemption and associated burden of proof to apply, Exemption 7(C) is appropriate because the relevant records were all "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7)(C). The records were generated in the course of investigating and detaining Ball and were located in databases used for law-enforcement activities. See Fuentes Decl., ¶ 36; Luckstone Decl., ¶¶ 20–21; see also Brennan Ctr. for Just. v. Dep't of Just., No. 18-1860, 2021 WL 2711765, at *3 (D.D.C. July 1, 2021) (docket numbers "compiled in . . . [a] database for law enforcement purposes" appropriately analyzed under 7(C)). This supplies the necessary "rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law," such that the information at issue falls under Exemption 7(C). See Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting Campbell v. Dep't of Just., 164 F.3d 20, 32 (D.C. Cir. 1998)).

Under that exemption, records may be withheld "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). When applying this exemption, the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

The agencies correctly determined that disclosure of the personally identifiable information at issue here "could reasonably be expected to constitute an unwarranted invasion of

personal privacy." The material USMS withheld included "names, telephone numbers, and other information that could identify the officers and investigators involved in the criminal investigation that culminated in Plaintiff's arrest and conviction." Def. MSJ at 14; see also, e.g., USMS Vaughn Index at 3, 4, 6, 8. Similarly, ICE withheld the names of "the Special Agents and other investigators who were involved in the investigation into Plaintiff's activities." Def. MSJ at 14; see also, e.g., ICE Vaughn Index at 15, 17, 21, 25; ICE Supplemental Vaughn Index at 1–7, 11–14, 17–20. Both agencies also withheld information relating to third parties, such as the names, birthdates, and contact information of Plaintiff's relatives, the names of his doctor and lawyer, names of children, and other identifying information that could risk embarrassment or harassment. See USMS Vaughn Index at 3, 6, 7, 9; ICE Vaughn Index at 7–8, 17, 23–25; see also Def. MSJ at 15.

The disclosure of this withheld information would risk invading personal privacy protected by the law of this Circuit, and that invasion is not outweighed by any public interest. Courts have repeatedly found that it is proper to withhold names and other identifying information about law-enforcement officers and government officials under Exemption 7(C). See, e.g., Lesar v. Dep't of Justice, 636 F.2d 472, 486–88 (D.C. Cir. 1980) (approving withholding of names of FBI agents in investigation); Dixon v. Dep't of Just., 279 F. Supp. 3d 1, 8–9 (D.D.C. 2017). There is little countervailing public interest in exposing the identities or contact information of law-enforcement officials. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." Davis, 968 F.2d at 1282 (internal quotation marks and citations omitted). Here, there is no indication that disclosure of the officials' information would illuminate "what [the] government is up to," and Plaintiff does not assert any public interest in

the information. See, e.g., Brown v. FBI, 873 F. Supp. 2d 388, 403 (D.D.C. 2012) (finding "any public interest" in FBI "internal phone numbers . . . to be *de minimis*"). A balancing of the privacy interests and public interest under Exemption 7(C) thus suggests that withholding was proper.

Likewise, when the information of private citizens is contained in law-enforcement files, it is protected under Exemption 7(C) unless it is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (internal quotation marks and citation omitted); see also Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It goes almost without saying . . . that individuals other than [the target of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation . . . ."). Plaintiff has made no allegation here that the agencies engaged in illegal activity nor has he asserted a public interest in the information regarding private citizens. The application of Exemption 7(C) to his material was correct.

    3.  *Exemption 7(E)*

Defendants also relied on Exemption 7(E) to withhold two types of information. That exemption allows the Government to retain "records or information compiled for law enforcement purposes" if their release "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). This Circuit's precedents "set[] a relatively low bar for the agency to justify withholding" under this exemption, as an agency need not meet a "highly specific burden of showing how the law will be circumvented." Blackwell, 646 F.3d at 42. Here, the exemption was applied by both USMS and ICE to internal codes and identification numbers and by ICE to information relating to its investigations.

The internal codes and numbers that both agencies withheld include "Plaintiff's FBI number and Federal Identification number and ICE's internal Case Number and Report of Investigation." Def. MSJ at 18; see also Luckstone Decl., ¶ 29; Fuentes Decl., ¶ 47. According to the agencies, such information could be used to "compromise the integrity of the data either by deleting or altering information" or by "allow[ing] a person to breach sensitive legal/law enforcement sensitive systems." Fuentes Decl., ¶ 47; see generally ICE Vaughn Index. Such withholdings are appropriate under Exemption 7(E). See Rojas-Vega v. ICE, 302 F. Supp. 3d 300, 310 (D.D.C. 2018) (approving withholding of "case numbers[,] . . . subject identification numbers, case identification numbers, and internal identifying codes"); see also Parker v. ICE, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (approving withholding of "identification numbers . . . [and] internal agency codes"). The fact that Ball received unredacted versions from the Pinellas County Sheriff's Office of some of the documents that USMS withheld under this exemption, see Pl. Cross-Mot. at 7, does not alter the Court's determination, as its review is limited to the agency's decision when it was made, and at this point "it would be illogical and wasteful to require an agency to produce multiple copies of the exact same document." Defs. of Wildlife v. Dep't of Interior, 314 F. Supp. 2d 1, 10 (D.D.C. 2004).

ICE also withheld investigative information — namely, "narrative portions of the Report of Investigation comprising techniques and/or procedures for law enforcement investigations or prosecutions that are not well known to the public," including "material that concerns details of how ICE conducts a criminal investigation involving an undercover agent." Def. MSJ at 21. These redactions also contained detail on "a forensic examination of a computer [and] cell phone." Id., ¶ 49. ICE compiled this information for purposes of its investigation into Ball, and an undercover agent's operations and "[f]orensic examination procedures are undoubtedly

14

'techniques' or 'procedures' used for 'law enforcement investigations.'" Blackwell, 646 F.3d at 42; see also Accurso v. FBI, No. 19-2540, 2021 WL 411152, at *7 (D.D.C. Feb. 5, 2021) (approving withholding under 7(E) of materials from forensic investigation in child-porn case). ICE has also "demonstrate[d] logically how the release of the requested information might create a risk of circumvention of the law," Blackwell, 646 F.3d at 42, by alerting criminals to forensic techniques currently in use such that they could, for example, erase their devices and evade investigations. See Fuentes Decl., ¶ 49. The withholdings under Exemption 7(E) are thus justified.

    C.  Segregablity

Ball next contests whether the agencies complied with FOIA by disclosing all "reasonably segregable portion[s]" of responsive records, see 5 U.S.C. § 552(b), which must be released unless the information is "inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977); see also Pl. Cross-Mot. at 17–18. He focuses on USMS's segregablity decisions, although he also contests ICE's determination as to a specific document: Report of Investigation 14. Id.

The Government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (internal quotation marks omitted), but this presumption does not eliminate the need for an agency to meet its evidentiary burden and give a full explanation for its segregablity decisions. See Mead Data Cent., 566 F.2d at 261. The agency must offer "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted).

Here, both USMS and ICE attest that "[a] line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Luckstone Decl., ¶ 31; Pineiro Decl., ¶ 36; Fuentes Decl., ¶ 52. Each agency also submitted a detailed Vaughn Index explaining why the relevant portions of records were withheld. See USMS Vaughn Index; ICE Vaughn Index; ICE Supplemental Vaughn Index. In so doing, the agencies have complied with their obligation to release all reasonably segregable information. See Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776–77 (D.C. Cir. 2002) (upholding non-segregablity decision on basis of detailed Vaughn Index and affidavit describing line-by-line review).

### D. *In Camera* Review

Plaintiff also asks the Court to review *in camera* ICE's Report of Investigation 14, an almost fully redacted 15-page document entitled "Forensic Examination of Digital Media Devices." Pl. Cross-Mot. at 14. As discussed earlier, the agency redacted this document under multiple exemptions to withhold law-enforcement codes and numbers, as well as the details of an investigation. See ICE Vaughn Index at 25–27. Although it is within the district court's discretion to "examine the contents of . . . agency records *in camera*. . . ," 5 U.S.C. § 552(a)(4)(B), such review is not always required. "[S]ummary judgment is appropriate without *in camera* review of the documents" "[i]f the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." Am. Civil Liberties Union v. Dep't of Defense, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks omitted).

Those conditions are met here. ICE's affidavits and Vaughn Index explain with specificity the types of information that were withheld from ROI 14, which exemptions were

16

applied to that information, and the rationale for those withholdings. See ICE Vaughn Index at 26–27. Plaintiff makes no allegation that ICE either acted in bad faith or provided reasons inconsistent with the record to apply these redactions. The Court also will not grant Ball's alternate request to order ICE to amend its Vaughn Index with more detail on the contents of ROI 14 given the specificity with which the withheld information is already described. Cf. Pl. Cross-Mot. at 15.

### E. Foreseeability

Using all his ammunition, Ball next claims that both agencies have failed to meet their burden to conduct a foreseeable-harm analysis under 5 U.S.C. § 552(a)(8)(A)(i)(I). That section allows an agency to withhold information only if it "reasonably foresees that disclosure would harm an interest protected by" one of the FOIA exemptions. See Pl. Cross-Mot. at 18–19. The D.C. Circuit recently explained in Reporters Committee for Freedom of the Press v. FBI, 3 F.4th 350 (D.C. Cir. 2021), that "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" Id. at 369 (alteration in original) (quoting H.R. Rep. No. 391, 114th Cong., 2d Sess. 9 (2016)). The independent burden of showing foreseeable harm cannot be met with abstract concerns or "generalized assertions." Id. Although agencies may use a categorical approach to identify harm, they cannot rely on "nearly identical boilerplate statements" when doing so. Ctr. for Investigative Reporting, 436 F. Supp. 3d at 106.

Given the foreseeable-harm requirement's recent vintage, precedents applying the required analysis to the exemptions at issue are relatively sparse. The Court, however, is not without guidance. Cf. Pl. Cross-Mot. at 19 (arguing Circuit had only addressed foreseeable harm

for Exemption 5).  The inquiry may vary with context as "the agency's burden to demonstrate that harm would result from disclosure may shift depending on the nature of the interests protected by the specific exemption with respect to which a claim of foreseeable harm is made." Ecological Rts. Found. v. EPA, No. 19-980, 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021), opinion vacated in part on reconsideration, 2021 WL 2209380 (D.D.C. June 1, 2021).  In some cases, the requirement may be met if "'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'"  Amiri v. Nat'l Sci. Found., No. 20-2006, 2021 WL 4438910, at *13 (D.D.C. Sept. 28, 2021) (alteration in original) (quoting Rep. Comm. For Freedom of the Press, 3 F.4th at 372).  When Exemption 7(C) is invoked, for example, the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm.  See Ecological Rts. Found., 2021 WL 2209380, at *19–20; see also Reps. Comm. for Freedom of the Press v. FBI, No. 15-1392, 2020 WL 1324397, at *9 (D.D.C. Mar. 20, 2020), aff'd in part, rev'd in part and remanded, 3 F.4th 350 (D.C. Cir. 2021) (withholding names of law-enforcement officials under Exemption 7(C) satisfied foreseeable-harm standard given declaration highlighting risks of "unauthorized inquiry and harassment").

    Here, the agencies' statements in their declarations and the Vaughn Indexes have established foreseeable harm by "connect[ing] the harms in a meaningful way to the information withheld."  Ctr. for Investigative Reporting, 436 F. Supp. 3d at 106.  The agencies explain that releasing the personal identifying information of Government employees might subject them to harassment or public hostility.  See USMS Vaughn Index at 3; see also Luckstone Decl., ¶¶ 27–28.  Releasing "Plaintiff's last known address and phone number" could also invade the privacy of the home's current occupants.  See USMS Vaughn Index at 5.  Similarly, ICE described the potential harms from releasing information that could identify child victims, suggest third parties

18

were involved in an investigation, and risk the breach of law-enforcement systems. See Fuentes Decl., ¶¶ 41–42, 47; see also Pineiro Decl., ¶¶ 30–31. This is enough to show foreseeable harm under Exemption 7(C). See Ecological Rts. Found., 2021 WL 2209380, at *19–20 (foreseeable harm established because disclosure of agents' identities withheld under Exemption 7(C) risked "expos[ing] them to harassment or danger").

Finally, Plaintiff cannot similarly challenge ICE's withholding under Exemption 3, as "the foreseeable harm requirement . . . does not require 'disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).'" Washington Post Co. v. Special Inspector General for Afghanistan Reconstruction, No. 18-2622, 2021 WL 4502106, at *22 (D.D.C. Sept. 30, 2021) (internal citation omitted).

    F.  Privacy Act

Ball last maintains that his Privacy Act claims against ICE remain live. See Pl. Cross-Mot. at 15. As the Government belatedly acknowledges, see Def. Reply at 13, he raised such claims in both his Complaint and his written request. See Compl. at 1, 4; FOIA Request at 1. Defendants argue, however, that ICE correctly relied on 5 U.S.C. § 552a(j)(2) to withhold information under the Privacy Act even though those exemptions were noted only in the Vaughn Indexes, not on the records themselves. See Def. Reply at 13. Under the claimed exemption, an agency's head "may promulgate rules . . . to exempt any system of records within the agency from any part of [the relevant portion of the Privacy Act]" if a law-enforcement agency maintains that system, and it "consists of . . . information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual." 5 U.S.C. § 552a(j)(2)(B).

ICE's declarations make clear that its records fall within this exemption, given that "all of the documents are reports of investigations prepared by Special Agents and are associated with an identifiable individual." Fuentes Decl., ¶ 28; Pineiro Decl., ¶ 20. Both the declarations and the Vaughn Indexes also indicate the specific types of information to which 5 U.S.C. § 552a(j)(2)(B) was applied and the system of records in which that information was contained. See Fuentes Decl., ¶ 27; Pineiro Decl., ¶ 19; ICE Vaughn Index; ICE Supplemental Vaughn Index. This information — which included the details of investigations and confidential-source techniques — was appropriately withheld under § 552a(j)(2)(B) as relating to a criminal investigation. See, e.g., Adionser v. Dep't of Just., 811 F. Supp. 2d 284, 301 (D.D.C. 2011) (withholding from inmate plaintiff records in FBI and DEA systems relating to drug investigation of him). And since FOIA exemptions also apply to this information, it was appropriately withheld under 6 C.F.R. § 5.10(b), which states that DHS can withhold information in applicable Privacy Act system "[o]nly if both a Privacy Act exemption and a FOIA exemption apply." Although it might have been preferable for ICE to also mark the documents with the relevant Privacy Act exemption, the Court has no need to order ICE to do so now. Cf. Pl. Cross-Mot. at 16.

## IV.   Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 19, 2021